IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MARVIN JOHNSON,** | ) | **CASE NO. 1:15 CV 0730** |
| | ) | |
| Plaintiff, | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| **DOUGLAS SAWYER, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

*Pro se* Plaintiff Marvin Johnson filed the above-captioned action against Cuyahoga County Land Reutilization Corporation ("Land Bank") Attorney Douglas Sawyer, Cuyahoga County Prosecutor Timothy J. McGuinty, Cuyahoga County Assistant Prosecutor Adam D. Jutte, Attorney David M. Douglass, Attorney Sean F. Berney, Attorney Heidi L. Cole, Attorney Gregg D. Garfinkel, Attorney Thomas A. Marino, II, Cleveland Municipal Court Magistrate Michael A. Bednar and Cleveland Municipal Court Magistrate William F.B. Vodrey. In the Complaint, Plaintiff alleges the Defendants committed fraud, extortion, theft, conspiracy, racketeering, and violations of the Fair Debt Collection Practices Act by allowing a state foreclosure action to proceed against him to collect unpaid income and property taxes. He seeks an order enjoining the sale of the property at sheriff's sale, and monetary damages.

**Factual and Procedural Background**

Plaintiff's Complaint, while verbose, contains very few factual allegations. It appears Plaintiff owed personal income taxes to the State of Ohio. The Ohio Department of Taxation,

pursuant to Ohio Revised Code § 5747.13(C), filed a Precipe with the Cuyahoga County Court of Common Pleas on September 6, 2011 certifying the income tax assessment had become final by operation of law. Plaintiff had seven other such assessments filed with the Cuyahoga County Clerk of Courts. All of the assessments were consolidated for collection on October 4, 2012. David M Douglass was appointed to represent the Ohio Department of Taxation.

The judgment was transferred to the Cleveland Municipal Court for execution, and a judgment lien was filed. In February and March 2013, the Ohio Department of Taxation attempted to conduct a Long Aid Examination against Plaintiff. Plaintiff initially refused to cooperate but eventually answered questions.

Meanwhile, the Cuyahoga County Treasurer initiated a foreclosure action with the Cuyahoga County Board of Revision to collect unpaid real estate taxes for a vacant parcel of land on the corner of East 169th Street and Invermere Avenue, which Plaintiff purchases from Key Bank in 2008. Plaintiff was served with a copy of the Complaint and filed an Answer. The Ohio Department of Taxation was also named as a Defendant. The Board of Revision issued an "Adjudication of Foreclosure" on March 20, 2015. Plaintiff did not appeal that decision.

Instead, Plaintiff filed this action. He contends Cuyahoga County is confusing the permanent parcel numbers and ownership information for the vacant lot at the corner of East 169th Street and Invermere Avenue, Permanent Parcel Number 140-09-057, with his personal residence located on Invermere Avenue with a Permanent Parcel Number of 140-09-058. The vacant lot was originally owned by Sandra Johnson, who is no relation to Plaintiff Marvin Johnson or his wife Brenda Johnson. Key Bank purchased the property through a foreclosure action in August 2007. In 2008, Plaintiff and his wife purchased from Key Bank a residence on Invermere Avenue, Permanent Parcel

Number 140-09-058, as well as the adjacent vacant lot, Permanent Parcel Number 140-09-057. The warranty deed provided to them lists the legal description for both parcels but assigns both to Permanent Parcel Number 140-09-058.

The Delinquent Tax Certificate attached to the foreclosure, dated December 6, 2013, indicates the vacant lot, Permanent Parcel No. 140-09-057 is still in the name of Sandra Johnson and states property taxes on the lot have not been paid for over a year. Moreover, the Preliminary Judicial report on the vacant lot includes a statement from the General Title Insurance Company that states, "Note: The legal description at Schedule A is at variance with the legal description on the last instrument of title for the following reason: Legal description on last instrument of title conveys caption and more land." (ECF No. 3-1 at 76). The same Judicial Report attaches the Plaintiff's warranty deed for the property showing one Permanent Parcel Number, 140-09-058. The report also lists debts of both Marvin and Brenda Johnson for unpaid personal income taxes, as well as debts of Sandra Johnson for unpaid real estate taxes in the amount of $ 1,926.82. Its not clear whether Plaintiff had not been paying taxes for the vacant lot, or whether he was paying them for both lots and the County did not correct its records when the properties were purchased together. Plaintiff claims the sheriff's sale was ordered for his personal residence. The Adjudication of Foreclosure (Sheriff Sale); however, lists the address of the property as "Vacant Lot, Invermere Avenue, Cleveland, Ohio 44128."

Plaintiff's Complaint does not clearly set forth the legal claims he intends to pursue in this case. He states the Defendants violated the Fair Debt Collection Practices Act, but does not specify any particular provision of the statute they violated. He alleges he sent certified letters and notices to Timothy McGinty requesting that he validate the debt the County claims he owes but did not get

-3-

the documentation he was requesting. He mentions the use of "fictitious straw man" as Plaintiffs in the state court cases, and contends the Defendants conspired to steal property and money from him. He contends only the attorneys submitted evidence in court and they have no personal knowledge of actual facts of a debt, thereby depriving the court of jurisdiction. He mentions fraud, extortion, and racketeering offenses were committed in the course of the foreclosure litigation.

The Defendants have all filed Motions to Dismiss. (ECF Nos. 3, 7, 10, 11, and 13). They assert that the Rooker-Feldman Doctrine applies and this Court lacks subject matter jurisdiction to conduct what would be appellate review of a state court judgment. (ECF No. 3 at 63, No. 7 at 172, No. 11 at 212). They also assert that the Fair Debt Collection Practices Act does not apply to this case because this situation does not qualify as a commercial transaction, and the Prosecutors do not qualify as debt collectors. They further assert that with respect to the personal income tax debt, the statute of limitations for a Fair Debt Collection Practices Act claim expired. (ECF No. 3 at 63, No. 7 at 181, No. 13 at 253). Defendants assert that even if the action is not barred by the Rooker-Feldman Doctrine, this Court is barred by the Doctrine of *Res Judicata* from reconsidering issues which were decided by the state. (ECF No. 7 at 187). Defendant Sawyer claims he is not mentioned at all in the body of the Complaint. His only connection to this case appears to be that he signed an Affidavit on behalf of the Land Bank indicating the Land Bank did not have an interest in acquiring the vacant lot. (ECF No. 11 at 210). Finally, Defendants Bednar and Vodrey claim they are entitled to immunity under Ohio Revised Code § 2744. (ECF No. 13 at 253).

**Standard of Review**

In this case, the Defendants ask this Court to dismiss the Complaint pursuant to Federal Civil Procedure Rule 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a

claim. Where the Defendant asks the Court to dismiss the Plaintiff's claims for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the Court need only determine whether it has jurisdiction over the Plaintiff's claims. The Sixth Circuit has adopted two standards of dismissal under Rule 12(b)(1), depending upon whether the movant makes a facial or factual attack on the Plaintiff's Complaint. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990). A facial attack merely questions the sufficiency of the pleadings. In reviewing a facial attack, the Court must apply the same standard applicable to Rule 12(b)(6) motions. On the other hand, where a District Court reviews a Plaintiff's Complaint under a factual attack, the Court does not presume that the Plaintiff's allegations are true. In such cases, the Court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts. *See Id.*; *see also Tennessee Protection & Advocacy, Inc. v. Board of Educ.*, 24 F.Supp.2d 808, 812–13 (M.D. Tenn.1998). The case at bar involves a factual attack on the sufficiency of Plaintiff's pleadings. Thus, the Court may review evidence beyond the pleadings in order to determine whether it has jurisdiction to hear the instant case.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) allows a Defendant to test the legal sufficiency of Complaint without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003). In evaluating a Motion to Dismiss, the Court must construe the Complaint in the light most favorable to the Plaintiff, accept its factual allegations as true, and draw reasonable inferences in favorable of the Plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Court will not, however, accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir.2000).

In order to survive a Motion to Dismiss, a Complaint must provide the grounds of the entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). That is,"[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted); *see Association of Cleveland Fire Fighters v. City of Cleveland*, No. 06–3823, 2007 WL 2768285, at *2 (6th Cir. Sept.25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)"). Accordingly, the claims set forth in a Complaint must be plausible, rather than conceivable. *See Twombly*, 550 U.S. at 555.

On a Motion brought under Rule 12(b)(6), the Court's inquiry is limited to the content of the Complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the Complaint may also be taken into account. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

**Discussion**

As an initial matter, the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, is a bar to Federal Court subject matter jurisdiction over this case. While the none of the Defendants raised this issue in their Motions to Dismiss, Federal Courts are always "under an independent obligation to examine their own jurisdiction," *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231(1990) and may not entertain an action over which jurisdiction is lacking. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701 (1982). Defects in subject matter jurisdiction cannot be waived by the parties and may be addressed by a Court on its own motion at any stage of

the proceedings. *Curry v. U.S. Bulk Transport, Inc.*, 462 F.3d 536, 539-40 (6th Cir. 2006); *Owens v. Brock*, 860 F.2d 1363, 1367 (6th Cir.1988). Indeed, the Federal Rules of Civil Procedures require that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the Court shall dismiss the action." Fed.R.Civ.P. 12(h)(3).

Under the TIA, this Court may not "enjoin, suspend or restrain the assessment, levy, or collection of any tax under State law where a plain, speedy, and efficient remedy may be had in the court of such State." 28 U.S.C. § 1341. The TIA is intended "to promote comity and to afford States the broadest independence, consistent with the federal constitution, in the administration of their affairs, particularly revenue raising." *Wright v. McClain*, 835 F.2d 143, 144 (6th Cir. 1987); *see also Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 378 (6th Cir. 1993) (quoting *Fair Assessment in Real Estate Ass'n v. McNary*, 454 U.S. 100, 103 (1981)). Where applicable, the TIA acts as a bar to federal jurisdiction. *Hedgepeth v. Tennessee*, 215 F.3d 608, 612 (6th Cir. 2000); *see also Wenz v. Rossford Ohio Transp. Improvement Dist.*, 392 F. Supp.2d 931, 935 (N.D. Ohio 2005).

Moreover, while the TIA specifically mentions suits asking the Court to enjoin collection of a tax, the Sixth Circuit broadly interprets the Act to bar suits for declaratory relief and monetary relief when there is an adequate remedy for redress in state court. *Hedgepeth*, 215 F.3d at 612 n. 4 (citing *California v. Grace Brethren Church*, 457 U.S. 393, 408–10 (1982)(holding that the TIA precludes district courts from awarding declaratory judgments) and *Nat'l Private Truck Council, Inc. v. Oklahoma Tax Comm'n*, 515 U.S. 582, 586–88 (1995)). *See Thiokol Corp*, 987 F.2d at 378 (finding that, although the TIA only specifically mentions injunctions, it also bars declaratory actions and suits seeking damages).

The assessments at issue in this case are clearly "taxes." The TIA applies only where the

challenged assessment is a "tax" levied for revenue purposes, as opposed to fees which are assessments made for regulatory or punitive purposes. *See Hedgepeth*, 215 F.3d at 612. The Ohio Department of Taxation was pursuing unpaid income taxes. The Cuyahoga County Treasurer was pursuing unpaid property taxes. Simply because the taxes at issue were transformed into a debt for purposes of collection by virtue of a state statute does not render them any less a tax under the TIA. *See, e.g., Brown Bark I, L.P. v. Traverse City Light & Power Dep't.*, 736 F.Supp.2d 1099, 1113 (W.D.Mich.2010) aff'd, 10–2644, 2012 WL 3871889 (6th Cir.2012) (citing *Levine v. Levine*, 209 F.Supp. 564, 566–67 (D.Del.1962)).

The foreclosure action in this case is actually a "collection" of a tax, rather than a standard foreclosure proceeding. *See, e.g., Dixon v. Oisten*, 62 F. App'x 105, 105 (6th Cir. 2003) (holding the TIA barred a claim challenging the manner in which the tax foreclosure was carried out where the Plaintiff claimed the foreclosure was without due process); *Johnson v. Mich. Dep't of Treasury*, No. 99–1730, 2000 WL 571916, at *2 (6th Cir. May 4, 2000) (holding the TIA barred Plaintiff's claim that he was denied due process because he did not receive notice of the tax foreclosure on his home); *see also Anderson v. County of Wayne*, 10–13708, 2011 WL 2470467 at *7 (E.D. Mich. June 20, 2011) (finding that "[t]he Sixth Circuit has held that the TIA bars claims challenging the manner in which tax foreclosures are carried out[ ]"). Plaintiff in this case was the Defendant in an Ohio tax foreclosure proceeding. Despite his claims of fraud, extortion, and even Fair Debt Collection Practices Act violations, it is precisely that foreclosure proceeding the Plaintiff challenges. Ohio Revised Code § 2327.02(C) expressly authorizes foreclosure sales as a means of collecting delinquent taxes. Therefore, the foreclosure proceeding at issue is, for purposes of the TIA, a "collection" of a tax.

Although the foreclosure action at issue is, in fact, a tax collection, the TIA only bars Plaintiff's claims if he has a state remedy that is "plain, speedy, and efficient." 28 U.S.C. § 1341. Federal courts must narrowly construe the "no plain, speedy, and efficient remedy" exception to the TIA. *See California v. Grace Brethren Church*, 457 U.S. at 413 (1982). The TIA, however, requires only that state court remedies meet "certain minimal procedural criteria." *See Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 512 (1981). State remedies meet this requirement where they "provide the taxpayer with a full hearing and judicial determination at which the taxpayer may raise any federal constitutional objections to the tax." *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 544 (discussing the comity doctrine's "plain, adequate, and complete remedy" requirement and determining it to be essentially equivalent to the "plain, speedy, and efficient remedy" requirement of the TIA under Fair Assessment). Even where Plaintiff allows a plain, speedy, and efficient remedy to elapse, such a remedy still satisfies the TIA. *See, e.g., Johnson*, 2000 WL 571916 at *2 (finding adequate state remedies available even where Plaintiff failed to take advantage of them, thus barring his claim under the TIA); *Aluminum Co. of Am. v. Dep't of Treasury*, 522 F.2d 1120, 1125 (6th Cir.1975); *see also*, e.g., *Wenz v. Rossford Ohio Transp. Improvement Dist.*, 392 F.Supp.2d 931, 937 (N.D. Ohio 2005)(Plaintiffs' failure to timely bring a claim in administrative or other state proceedings does not make the state remedy inadequate); *Anderson*, 2011 WL 2470467 at *7 (finding Plaintiffs had a plain, speedy, and efficient state remedy where they could have (1) paid the delinquent taxes; (2) participated in the public foreclosure auctions; or (3) challenged the foreclosure ruling in state court).

Here, the State of Ohio provides a remedy for taxpayers like Plaintiff to appeal the foreclosure decision of the Board of Revision under Ohio Revised Code § 323.79. Under this statute,

any party to any proceeding instituted pursuant to Ohio Revised Code §§323.65 to 323.79 who is aggrieved by the proceedings of the county board of revision may file an appeal in the Court of Common Pleas pursuant to Ohio Revised Code §§2505 and 2506 upon a final order of foreclosure and forfeiture by the board. A final order of foreclosure and forfeiture occurs upon confirmation of any sale or upon confirmation of any conveyance or transfer to a certificate holder, community development organization, county land reutilization corporation, municipal corporation, county, or township. In this appeal the parties may assert issues raised or adjudicated in the board of revision proceedings, as well as other issues that are raised for the first time on appeal and that are pertinent to the abandoned land that is the subject of those proceedings. OHIO REVISED CODE § 323.79. The owner of the land also has the right to redeem the property using the procedures set forth Ohio Revised Code §§ 323.65 to 323.79. Plaintiff has a "plain, speedy, and efficient" remedy available in state court. The TIA therefore deprives this Court of subject matter jurisdiction to enjoin or interfere with the tax collection proceedings.

Although Plaintiff's claims are barred under the TIA, Defendants' alternative argument also favors dismissal to the extent he asks this Court to stop the sheriff's sale of his property. The Rooker-Feldman doctrine operates to deprive this Court of jurisdiction where a Plaintiff seeks to appeal an adverse state court judgment in this Court.

United States District Courts do not have jurisdiction to overturn state court decisions even if the request to reverse the state court judgment is based on an allegation that the state court's action was unconstitutional. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005). Federal appellate review of state court judgments can only occur in the United States Supreme Court, by appeal or by writ of certiorari. *Id.* Under this principle, generally referred to as the Rooker-

Feldman Doctrine, a party losing his case in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the party's claim that the state judgment itself violates his or her federal rights. *Berry v. Schmitt* 688 F.3d 290, 298-99 (6th Cir. 2012).

The Rooker-Feldman doctrine is based on two United States Supreme Court decisions interpreting 28 U.S.C. § 1257(a).[1] *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). This statute was enacted to prevent "end-runs around state court judgments" by requiring litigants seeking review of that judgment to file a writ of certiorari with the United States Supreme Court. The Rooker-Feldman doctrine is based on the negative inference that, if appellate court review of state judgments is vested in the United States Supreme Court, then such review may not occur in the lower federal courts. *Exxon Mobil Corp.*, 544 U.S. at 283-84; *Kovacic v. Cuyahoga County Dep't of Children and Family Services*, 606 F.3d 301, 308-311 (6th Cir. 2010); *Lawrence v. Welch*, 531 F.3d 364, 369 (6th Cir. 2008).

Not all of the Defendants applied the correct standard for Rooker-Feldman. Rooker-Feldman

---

[1] 28 U.S.C. § 1257(a) provides:

> Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

is a doctrine with narrow application. It does not bar federal jurisdiction "simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Exxon Mobil Corp.*, 544 U.S. at 293; *Berry*, 688 F.3d 298-99. It also does not address potential conflicts between federal and state court orders, which fall within the parameters of the doctrines of comity, abstention, and preclusion. *Berry*, 688 F.3d 299. Instead, the Rooker-Feldman doctrine applies only where a party losing his or her case in state court initiates an action in federal district court complaining of injury caused by a state court judgment itself, and seeks review and rejection of that judgment. *Berry*, 688 F.3d 298-99; *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009). To determine whether Rooker–Feldman bars a claim, the Court must look to the "source of the injury the Plaintiff alleges in the federal complaint." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006); *see Berry*, 688 F.3d at 299; *Kovacic*, 606 F.3d at 310. If the source of the Plaintiff's injury is the state-court judgment itself, then the Rooker–Feldman doctrine bars the federal claim. *McCormick*, 451 F.3d at 393. "If there is some other source of injury, such as a third party's actions, then the Plaintiff asserts an independent claim." *Id.*; *see Lawrence*, 531 F.3d at 368–69. In conducting this inquiry, the Court should also consider the Plaintiff's requested relief. *Evans v. Cordray*, No. 09–3998, 2011 WL 2149547, at *1 (6th Cir. May 27, 2011).

This case does not fall clearly on one side or the other of the Rooker-Feldman analysis. The source of Plaintiff's injury is clearly the state court foreclosure proceedings and the judgment. The Defendants in this case are the attorneys prosecuting the foreclosure action on behalf of the Cuyahoga County Treasurer and the Ohio Department of Taxation, two Cleveland Municipal Court Magistrates who appear to have conducted the Long Aid Examinations in 2013, and the Land Bank Attorney who signed the Affidavit. Plaintiff's claims do not appear to be directed toward any

-12-

particular individual's actions, but rather contest the proceedings as a whole. He manages to assert a claim under the Fair Debt Collection Practices Act, but he does not provide any particular provision of the Act he thinks the Defendants violated. The remainder of his claims are generalized attacks on the proceedings themselves. While he seeks monetary damages against the Defendants, he also asks the Court to enjoin the sheriff's sale. To enjoin the execution of the judgment, the Court would have to examine the validity of that state court judgment. This Court lacks subject matter jurisdiction to grant that request.

With respect to his claim for damages, the applicability of the Rooker-Feldman Doctrine is not as clear. On one hand, if this Court issued a decision favorable to Plaintiff on any of his claims, the result would potentially be contrary to the result of the state court proceedings. On the other hand, Plaintiff is not overtly asking this Court to set aside that judgment. He may simply want to relitigate the issues and claims in this Court in the hope of achieving a different result. To the extent he wants this Court to overturn the state court judgment, the Court lacks jurisdiction to grant the request. To the extent Plaintiff seeks to litigate these issues anew, he is barred from proceeding with this action by the doctrine of *res judicata*.

A Plaintiff cannot file an action in federal court to relitigate matters that were already decided in State Court proceedings. Federal Courts must give the same preclusive effect to a State Court judgment as that judgment receives in the state that issued the judgment. 28 U.S.C. § 1738; *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007); *Young v. Twp. of Green Oak*, 471 F.3d 674, 680 (6th Cir. 2006). In other words, if Plaintiff would not be able to file another action in State Court to relitigate his claim, he cannot file an action in Federal Court to assert the claim and avoid the *res judicata* bar. To determine the preclusive effect that the prior state court judgment has on the present

-13-

federal action, the Court must apply the law of preclusion of the state in which the prior judgment was rendered, in this case, Ohio. *Migra v. Warren City School District Board of Educ.* 465 U.S. 75, 81 (1984).

Under Ohio law, the doctrine of *res judicata* dictates that "a final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction is conclusive of rights, questions and facts in issue as to the parties and their privies, and is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them." *Johnson's Island, Inc. v. Bd. of Twp. Trustees*, 69 Ohio St.2d 241, 243 (1982). Application of the doctrine of *res judicata* does not depend on whether the original claim explored all possible theories of relief. *Brown v. Dayton*, 89 Ohio St.3d 245, 248 (2000). Rather, "a valid, final judgment upon the merits of the case bars any subsequent action 'based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.'" *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382 (1995).

In Ohio, the doctrine of *res judicata* encompasses the two related concepts of claim preclusion and issue preclusion. *State ex rel. Davis v. Pub. Emp. Ret. Bd.*, 120 Ohio St.3d 386, 392, 899 N.E.2d 975, 981 (2008). Under the Ohio doctrine of claim preclusion, "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382 (1995). The doctrine of claim preclusion encompasses "all claims which were or might have been litigated in a first lawsuit." *Id.* By contrast, issue preclusion, or collateral estoppel, "precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action." *MetroHealth Med. Ctr. v. Hoffman-LaRoche, Inc*., 80

Ohio St.3d 212, 217 (1997).  Issue preclusion applies when a fact or issue "(1) was actually and directly litigated in the prior action; (2) was passed upon and determined by a court of competent jurisdiction; and (3) when the party against whom [issue preclusion] is asserted was a party in privity with a party to the prior action."  *Thompson v. Wing*, 70 Ohio St.3d 176, 183 (1994).

In the instant action, both issue and claim preclusion would bar relitigation of this matter. All of the parties to this case were parties or representing parties in the state court proceedings, with the exception of Douglas Sawyer, the attorney for the Land Bank.  The issue of the correct parcel numbers for the property as well as the ownership and property tax liability could and should have been raised and litigated in the state court proceedings.  His Fair Debt Collection Practices Act claims could also have been asserted in the state court proceedings as they appear to be connected to the County's alleged failure to produce an accurate chain of title and property tax assessment records.  If Plaintiff did not get adequate consideration of these issues or claims in State Court, his remedy is a file an appeal, not to file a new action in Federal Court in the hope of obtaining a new result.  This Court must give full faith and credit to the State Court proceedings.

Furthermore, even if this Court had jurisdiction to entertain this case, and it were not barred by barred *res judicata*, Plaintiff fails to state a claim upon which relief may be granted.  He mentions the Fair Debt Collection Practices Act, and freely uses the words "Debt Collector" and "fraudulent" but does not specify a particular part of the Act he believes the Defendants violated, nor does he provide any facts to suggest the actions the Defendants took that violated that provision.  Although the standard of review is liberal for *pro se* pleadings, it requires more than bare assertions of legal conclusions.  *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726-27 (6th Cir. 1996). The Complaint must give the Defendants fair notice of what the Plaintiff's claims are and the grounds

upon which they rests. *Id.* at 726; *Bassett v. National Collegiate Athletic Ass'n* 528 F.3d 426, 437 (6th Cir. 2008). Based on the allegations stated in the Complaint, all that can be ascertained is that the Defendants filed a foreclosure action in an attempt to collect unpaid personal income taxes and property taxes. Merely describing that action as "fraudulent" is not sufficient to state a claim.

Plaintiff's other potential claims are similarly vague. He mentions 42 U.S.C. § 1983 as a basis for jurisdiction, but does not specify how any of the named Defendants violated a particular Constitutional right. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).

Plaintiff uses the terms "fraud, extortion, theft, conspiracy, and racketeering" in his case caption, but does not give any suggestion of the type of cause of action he is attempting to assert with respect to these statements. It is possible he is attempting to state a claim under the Racketeer Influenced Corrupt Organizations Act ("RICO"). Pursuant to 18 U.S.C. § 1964(c), RICO provides a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." In turn, Section 1962 states in relevant part:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection ... (c) of this section.

Although this case involves the collection of an alleged debt, it does not involve the "collection of an unlawful debt." Under RICO, "unlawful debt" pertains to illegal gambling debt or debt unenforceable because of usury laws. 18 U.S.C. § 1961(6); *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 229 (6th Cir. 1997). Plaintiff does not plead any facts to reasonably suggest he may have a claim under RICO.

To the extent Plaintiff was attempting to assert some other claim for "fraud, extortion, theft, conspiracy, and racketeering," he failed to provide enough information to give the Defendants notice of the nature of his claims or the facts supporting those claims. These assertions also fail to state a claim upon which relief may be granted.

**Conclusion**

Accordingly, the Defendants' Motions to Dismiss (ECF Nos. 3, 7, 10, 11, and 13) are **GRANTED**, the Plaintiff's Motion for Summary Judgment (ECF No. 4) and Motion for Temporary Restraining Order (ECF No. 14) and Motion for Judgment for Defendant's Attempted Fraud on the Court (ECF No. 12) are **DENIED**. This action is dismissed for lack of subject matter jurisdiction. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.

                                     _/s/Donald C. Nugent_
                                     DONALD C. NUGENT
                                     UNITED STATES DISTRICT JUDGE

Dated: _August 11, 2015_

---

[2] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.